### COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO, Plaintiff,

### v.

### NEW YORK TELEPHONE COMPANY, Defendant.

United States District Court
S. D. New York.

Oct. 1, 1962.

Cooper, Ostrin, Devarco & Ackerman, New York City, for plaintiff; Herman E. Cooper, George A. Nicolau, and Ronald J. Brooks, New York City, of counsel.

Proskauer, Rose, Goetz & Mendelsohn, New York City, for defendant; Edward Silver, William Witman, Martin J. Oppenheimer, New York City, of counsel.

TYLER, District Judge.

Plaintiff ("the Union") sues to compel defendant ("the Company") to arbitrate a grievance relating to temporary promotions of personnel. Both parties, agreeing that there is no real issue of fact between them, have moved for summary judgment. For reasons to be discussed hereinafter, the Company's cross motion for summary judgment dismissing the action is granted.

The collective bargaining agreement between the parties, executed on June 14, 1961, contains a grievance and arbitration procedure which is set forth in Articles ELEVENTH and TWELFTH of the agreement. The basic arbitration provision is contained in Section 12.01 and provides:

"12.01. Either the Union or the Company may arbitrate a grievance

regarding the true intent and meaning of a provision of this Agreement, or a grievance involving a claim referable to arbitration as provided in Article 7, 8, 10 and 15, provided in all cases that the grievance has been processed in accordance with the provisions of Article 11 and has not been adjusted, and that written notice of intention to arbitrate is given to the other party within thirty (30) calendar days after the review in Step 4 of Article 11 has been completed. It is understood that the right to require arbitration does not extend to any matters other than those expressly set forth in this Article."

Article 9, Section 9.08, dealing with promotions, states as follows:

"9.08. In selecting employees for promotion to occupational classifications within the bargaining unit, seniority shall govern if other necessary qualifications are substantially equal. In no event shall any grievance or dispute arising out of this Section 9.08 be subject to the arbitration provisions of this agreement."

On June 30 and July 12, 1961, the Union filed a grievance with the Company arising out of Section 9.08. The Union maintained that temporary promotions by the Company should be governed by seniority, whereas the Company asserted that Section 9.08 required only that seniority be used as a criterion for permanent promotions. After the grievance procedure had been exhausted, the Union requested that the Company arbitrate the dispute. The Company maintained that since the dispute arose out of Section 9.08, it was not arbitrable by the express terms of the last sentence of that paragraph and therefore refused to submit this grievance to arbitration.

■ Jurisdiction of this matter is conferred upon the court by Section 301 of Labor Management Relations Act, 29 U.S.C. § 185. That jurisdiction is limited to a determination of whether " * * * the reluctant party has breached his promise to arbitrate." United Steel-

workers of America v. Warrior and Gulf Navigation Co. (1960), 363 U.S. 574, at p. 582, 80 S.Ct. 1347, at p. 1353, 4 L.Ed. 2d 1409.

Citing Warrior and its equally well-known companion decision, United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), the Union argues in effect that the Supreme Court has construed Section 301 to create almost an unrebuttable presumption favoring arbitration. The Union also urges that, in any event, the collective bargaining agreement contains a broad and comprehensive arbitration clause without exceptions or exclusions pertinent to the grievance in question. See Procter & Gamble Independent Union of Port Ivory v. The Procter & Gamble Manufacturing Company, 298 F.2d 644 (2d Cir. 1962). Finally, the Union would appear to contend that even if the contract here could be construed to contain some exclusionary language, such is sufficiently vague as not to remove those doubts which "should be resolved in favor of (arbitration) coverage." See Warrior, supra, at p. 584, 80 S.Ct. at p. 1354.

■■ Assuming these to be fair interpretations of the Union's substantial contentions here, I find that I do not quite agree with the interpretation placed upon the Warrior and Steelworkers cases by counsel for the Union. In my view, the Supreme Court has made it abundantly clear that Section 301 requires federal courts to scrutinize the collective bargaining provisions relating to arbitration and to compel arbitration in all instances except those where it is clear that the parties did not intend to commit their disputes in question to arbitration procedures. Indeed, although the parties to this case apparently were unaware of some recent decisions of the Supreme Court in this area, that Court in June of this year reaffirmed this interpretation and refrained from compelling arbitration under the terms of a restricted arbitration clause upon a finding that " * * * the parties did not intend to commit all of their possible disputes and the whole scope of their relationship" to

this remedy. Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 1321, 8 L.Ed.2d 462 (1962); see also Teamsters, Chauffeurs, and Helpers Local Union v. Yellow Transit Lines, 370 U.S. 711, 82 S.Ct. 1293, 8 L.Ed.2d 792 (1962). Fortified by these most recent pronouncements of the Supreme Court, I conclude that neither Section 301 nor the cases construing it establish any legislative or judicial policy of compulsory arbitration where collective bargaining agreements do not so provide.

■ The Union, however, argues that the collective bargaining agreement here contains what should be styled a "broad and comprehensive" arbitration clause sufficient to require arbitration of any grievance, such as the one at bar, where one party or the other raises a question of interpretation. If we were to confine ourselves to consideration of Article 12, such an argument might be persuasive. However, in reading the contract as a whole, it seems clear that the parties intended to contract for arbitration of any "grievance regarding the true intent and meaning of a provision of this Agreement * * *" unless specifically excepted or excluded by contract language appearing in the arbitration article or elsewhere in the contract. More specifically, since this dispute admittedly arises under the promotion article, Article 9, I am of the opinion that the exclusionary language in Section 9.08 (second sentence) is clear beyond reasonable dispute and thus controlling.

As has been pointed out by Judge Magruder, the terms of a collective bargaining contract, as properly interpreted, can be and often are quite restrictive as to the issue or issues which the parties are willing to leave to an arbitrator. Local 201 v. General Electric Company, 262 F.2d 265 (1st Cir. 1959)[1]. In the collective bargaining agreement before this court, I am of the opinion that the parties carefully delineated those issues which they wish to submit to arbitration and those which they do not. In short, this would appear to be a more restrictive arbitration contract than those considered by, for example, the Supreme Court in Warrior and Enterprise, and the Second Circuit in Procter & Gamble.

Conceding *arguendo* that exclusionary language is possible in these contracts, the Union contends that the provisions of Section 9.08 of Article 9 are not sufficiently clear as to remove doubts as to their precise meaning. More particularly, the Union admits that the last sentence of Section 9.08 may be superficially exclusionary in that it commits certain functions in the promotion process to the exclusive jurisdiction of the Company; however, it adds that the last sentence of the paragraph cannot be construed to exclude arbitration of disputes over interpretation of the promotion article, including even Section 9.08. The short answer to this last argument is that it is difficult to imagine much clearer exclusionary language than, "In no event shall *any* grievance or dispute * * * be subject to * * * arbitration * *."

Other portions of the contract suggest still another effective rebuttal to this last argument of the Union. For example, paragraph 15.03 of the agreement contains this illuminating language:

"15.03. Any dispute involving the true intent and meaning of Section 15.02 of this Article may be submitted to the grievance and arbitration provisions of this Agreement. However, nothing herein shall be construed to subject the Plan or its administration or the terms of a proposed change in the Plan to arbitration."

This paragraph indicates that where the parties intended to adopt the construction now urged by the Union for Section 9.08, they could and clearly did achieve such result without ambiguity.

Settle order on notice in accordance with the views expressed hereinabove.

[1]. See also discussion, Cox, "Reflections upon Labor Arbitration," 72 Harv.L.Rev., 1482, at pages 1500–01.